UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**ROBERT KARL GEORGE,**

    **Plaintiff,**

    v.                                   Civil Action No.: 3:10-cv-688-J-34JBT

**WALTER A. MCNEIL et al.,**

    **Defendants.**
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff, Robert Karl George, by and through his undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and files this Response to Defendants' Motion for Summary Judgment (Doc. 108; "Motion for Summary Judgment") stating that the Motion for Summary Judgment should be denied because there are material issues of fact in dispute and Defendants are not entitled to judgment as a matter of law. In support hereof, Plaintiff George relies upon the record of this case, deposition testimony, the Fourth Amended Complaint (Doc. 82), Plaintiff's Affidavit (Exhibit B (Doc. 101-2)), Defendants' Motion for Summary Judgment ("Motion (Doc. 99)), Expert Report of Dr. Joel Nitzkin as well as the law and argument presented below.

**I.    PROCEDURAL BACKGROUND AND MATERIAL FACTS IN DISPUTE SUPPORTING PLAINTIFF'S RESPONSE**

This case was filed *pro se* by Plaintiff George while he was still in the custody of the Florida Department of Corrections ("DOC"). Undersigned counsel agreed to *pro bono* representation in this case and was appointed by the Court by Order filed March 10, 2011 (Doc.

51). However, it was not until March 13, 2012, that Defendants answered Plaintiff's complaint (Doc. 89) in this case following motions practice.

Plaintiff entered the custody of DOC on June 10, 2009. Fourth Amended Complaint (Doc. 82) ("Complaint") at ¶ 13 (verified by Plaintiff's Affidavit at ¶2 (Doc. 101-2)1; Motion at 3. At the time of his incarceration, Plaintiff George informed the examining physician at Lake Butler Reception and Medical Center ("RMC") that he presently had Hepatitis C infection and requested medical treatment for it as soon as possible. *Id.* at ¶ 14; Motion at 3. In July 2009, Plaintiff was transferred to Santa Rosa Correctional Institute and there he sent an Inmate Request asking to see a physician to be treated for his serious medical condition of Hepatitis C infection/progressive liver disease. *Id.* at ¶ 16. Soon thereafter, the physician at Santa Rosa C.I. ordered a blood test for Plaintiff. *Id.* at ¶ 17. In August 2009, Plaintiff was transferred to Baker Correctional Institution and in September 2009, Plaintiff met with Defendant Dr. Toung Van Le who informed Plaintiff that he had a Type 1 Hepatitis C infection and that his liver enzyme levels were double what were normal. *Id.* at ¶¶ 19-20. Defendant Le advised Plaintiff that these levels showed that the infection was actively progressing and it could be fatal. *Id.* at ¶ 19. Defendant Le also provided Plaintiff a copy of his medical report and advised, *inter alia,* that Plaintiff's enzyme levels do not have to be elevated for irreparable damage to happen. *Id.* at ¶ 21. Finally, Defendant Le recommended further evaluations and treatment for Plaintiff with a specialist in November 2009; the treatment would require taking the medications Interferon and Ribavirin, which was a year-long treatment plan. *Id.* at ¶ 23; Motion at 3.

It is undisputed in this matter that Plaintiff had Hepatitis C infection and required treatment. Motion at 2-7. Furthermore, Plaintiff did not receive medical treatment for his

condition. *Id.* at 7 ("Dr. Le had no ability himself either to conduct a liver biopsy or to provide ribavirin/interferon treatment."). At no time during Plaintiff's incarceration with DOC did he receive medical treatment. Affidavit of Plaintiff (Doc. 101-2) at ¶4. Also, Plaintiff was never asked if he anticipated sexual partners upon release or that counseling of sexual partners was a requirement of DOC o treat Hepatitis C. *Id.* at ¶3. Had Plaintiff been asked by DOC, he would have advised that he did not plan on having sexual partners upon release from DOC custody. *Id.*

Plaintiff filed numerous grievances with Defendants because of the denial of medical treatment. On December 5, 2009, Plaintiff filed a medical grievance, because medical treatment for Plaintiff's serious medical condition had not yet begun. The grievance stated, in part: "I informed D.O.C. I have Hepatitis C when I was with the Doctor on June 15th and asked Doctor to [be] treated for the Hepatitis C. It has been 6 months and no treatment…" Complaint at ¶ 25, and Exhibit A to Complaint. Despite the grievance, no medical treatment for Plaintiff's Hepatitis C was initiated. *Id.* at ¶ 26. On January 5, 2010, Plaintiff filed a second medical grievance because treatment of his serious medical condition had still not started. Complaint at ¶ 27. Plaintiff's second medical grievance stated, in part, as follows: "I have requested medical treatment for my Hepatits C since June 2009. . . My Liver Blood enzyme levels have been tested monthly and are elevated. . .This condition has been left untreated now 7 months and treatment takes up to 1 year. " *Id.*, and Exhibit B to Complaint. In November 2009 and January 12, 2010, Plaintiff was permitted to see specialist Dr. Radi at Lake Butler RMC, and was advised by Dr. Radi that Plaintiff's viral load was extremely high creating a dangerous health condition. Motion at 3; Complaint at ¶ 29; Declaration of Trung Van Le (Exhibit 4 to Motion Doc. 99-4)). Dr. Radi also informed Plaintiff that his sonogram showed cirrhosis and scarring which leads to liver

---

1 All references to the Plaintiff's Complaint are also verified by the Plaintiff's Affidavit (Doc. 101-2).

failure, and also told Plaintiff that he needed antiviral therapy to halt the progression of the damage caused by the untreated Hepatitis C infection. *Id.* Finally, Dr. Radi told Plaintiff he should immediately begin treatment, starting with a liver biopsy.2  *Id.*

Dr. Le reported to Dr. Ronald Solorzano. Deposition of Toung Van Le, M.D. at 14 (attached as Exhibit 1 hereto). Dr. Le understood at the time he treated Plaintiff that Hepatitis C1 required treatment of Interferon and Ribaviron for 48 weeks. *Id.* 28. Dr. Solorzano agrees that Plaintiff required treatment for Hepatitis C1 of 48 weeks. Deposition of Ronald Solorzano, M.D. at 22-24 (attached as Exhibit 2 hereto). Dr. Solorzano denied treatment to Plaintiff because there was allegedly insufficient time to treat Plaintiff prior to his release. *See* Letter of Ronald Solorzano, M.D.3 dated 1/19/2010 (attached as Exhibit 3 hereto). The Federal Rule of Civil Procedure 30(b)(6) of the Florida Department of Corrections testified as follows regarding the 48 week treatment period:

> Q. Dr. Harris, the Hepatitis C treatment contemplated by this supplement policy on Hepatitis C Virus Infection Management, was it contemplated to be a 12-month treatment with the medication?
>
> A. That's correct. It was designed to be, for most inmates, a 48-week course of therapy, if the inmate was able to tolerate the full course at the full dose.
> So, there would be, again, the six month period that you would have to have abnormal liver functions to be eligible, 48 weeks or essentially one year, whether it be some tests done as well.
> A liver biopsy would normally be done, which takes some time to schedule. Once that's completed and the results are obtained, also viral load testing. I guess that's the best way to put it, viral load testing would be performed. And again—and then finally—I'm sorry—genotype testing, which talks to the type of Hepatitis.
> So, once you get the genotype, the viral load, the liver functions and the liver biopsy, then a decision is made by the gastrointestinal specialist whether the inmate is eligible for therapy.

---

2 Dr. Radi's medical note on Plaintiff states treatment of the Hepatitis was contemplated. *See* Exhibit 4.
3 Defendants appear to deny that Plaintiff has an injury, but then states that Dr. Le repeatedly recommended that Plaintiff be treated. Motion for Summary Judgment at 7.

Therapy would be approximately 48 weeks, and then there would be the six month observation period afterwards. So, that would be the entire course of management of Hepatitis C.

Deposition of Steven Harris, MD, MSC at 11-12 (Exhibit 5 attached hereto).

Plaintiff's Expert, Joel Nitzkin, M.D., concludes that: "**with a reasonable degree of medical certainty, this expert witness agrees with the plaintiff allegations. Both the six month delay in completing the needed pre-treatment diagnostic workup and refusal to provide the needed anti-Hepatitis C therapy based on the 18 month guideline, by the Baker Correctional Institution of the Florida Department of Corrections, constitute deliberate indifference to a serious medical need.**" Report of Joel Nitzkin, M.D. dated December 6, 2012, at p. 3 (emphasis added)(attached as Exhibit 6, hereto). In support of his findings, Dr. Nitzkin finds in pertinent part the following:

- Hepatitis C is a serious medical illness, far more common in prisoners than in the general population and if left untreated Hepatitis C can lead to liver failure or liver cancer;

- The treatment to be given, in the case of Mr. George would involve 48 weeks of interferon, ribavirin, and possibly other medications and as agreed by virtually all authorities in the field this treatment is well worth the cost and in persons with Mr. George's then-current clinical profile and a 6 month follow up;

- From this perspective, both the six month delay in completing the needed pre-treatment diagnostic workup and the refusal to treat based on the 18 month guideline, constitute deliberate indifference;

- In the case of Mr. George, the clinical recommendation for such treatment was written by Dr. Radi of the Baker Correctional Institution November 19, 2009, on the basis of the recently completed diagnostic studies and at that time, 19 months still remained in Mr. George's anticipated period of incarceration;

- The 18 month policy guideline in this case is unreasonable as it seems intended to reduce costs to the prison system, for short-term inmates, without considering the needs of the inmate, the risk to the outside community, or the possibility by which prison health authorities could pre-arrange, through public health authorities and medical providers, completion of the course of treatment and the desired post-

> treatment follow-up;

> - The National Commission on Correctional Health Care has as its #1 Standard, on page 3 of its Standards document, "Access to Care." This is Standard # P-A-01, graded as "essential." This standard specifies that inmates have access to care to meet their serious medical, dental and mental health needs and that the responsible health authority identifies and eliminates any barriers to inmates receiving health care. Access to care is defined as **care provided in a timely manner**, in accordance with a clinicians professional clinical judgment, as ordered by a licensed responsible physician.

*Id.* at 2-3.

On or about January 14, 2010, Plaintiff received a response to this second medical grievance, however, no medical treatment was initiated for Plaintiff's serious medical condition. *Id.* at ¶ 30. On or about February 2, 2010, Plaintiff filed a third medical grievance because three weeks had passed since Dr. Radi had stated that Plaintiff's medical treatment should start immediately and Plaintiff had not received any treatment of his serious medical condition. *Id.* at ¶ 31.

On or about February 12, 2010, Defendant Le informed Plaintiff that he was denied the liver biopsy and treatment for his serious medical condition because there were less than eighteen (18) months left until his tentative release date ("TRD"). *Id.* at ¶ 32. Also on or about February 12, 2010, Plaintiff filed a Request for Administrative Remedy or Appeal to Secretary of DOC, Defendant George McNeil, to appeal the decision to deny Plaintiff treatment of his serious medical condition. *Id.* at ¶ 33. Defendant McNeil's response to this appeal was a request for Plaintiff to file a grievance at the institutional level, and **no** medical treatment was initiated for Plaintiff's serious medical condition. *Id.*

On or about February 23 and March 2, 2010, Plaintiff filed Requests for Administrative Remedy to Baker C.I. Assistant Warden, Defendant Susan T. Robinson, further requesting

6

medical care, detailing his denial of medical treatment and his grievances with the medical staff, but on or about March 10, 2010, Defendant Robinson denied Plaintiff's Request for medical care. *Id.* at ¶¶ 34-35. Importantly, no medical treatment was initiated for Plaintiff's condition. *Id.* at ¶ 35. After receiving the denial, Plaintiff filed another Request for Administrative Remedy and Appeal to the Baker C.I. Warden, Defendant Melody Flores, due to his continued denial of medical treatment. *Id.* at ¶ 36. Furthermore, on or about March 15 and 26, 2010, Plaintiff filed additional Requests for Administrative Remedy or Appeal to Defendant McNeil due to the continued denial of medical treatment. On March 25, Plaintiff's Requests were returned as "unprocessed" and these were signed by Defendants Robinson and Le. *Id.* at ¶¶ at 37-39. Finally, on or about May 26, 2010, Defendant McNeil denied Plaintiff's March 26, 2010 request for medical assistance. *Id.* at ¶ 40.

Despite the repeated requests for medical attention for his serious health condition, Dr. Solorzano avers that it was not until January 2011 that he reviewed the requests made on Plaintiff's behalf for a biopsy due to hepatitis C infection and that by letter dated January 19, 2011, he denied the request "on the ground that the inmate's projected release date would occur in less than 18 months." Declaration of Ronald Solorzano (Exhibit 5 to Motion (Doc. 99-5)). However, even according to Defendants' evidence at Exhibit 6 (Doc. 99-6), Plaintiff was within the 18 month treatment guideline by the time of his first grievance in December 2009, but was still not treated for his serious medical condition. In fact, the actual treatment time according to Defendant Solorzano is 48 weeks, or 12 months. Exhibit 5 to Motion (Doc. 99-5). It is only the six month period regarding counseling to sexual partners of inmate patients that creates the DOC's 18 month period as the treatment has the potential to cause birth defects. *Id.*

7

At all times relevant herein, Defendants, as supervisors of one another, were (1) on notice of the need to make corrections in the treatment of Plaintiff by subordinates, which said Defendants failed to enact; (2) that the Defendants, as supervisors, directed subordinates to act unlawfully in the treatment of Plaintiff; (3) that the Defendants, as supervisors, knew that subordinates would act unlawfully in the lack of treatment of Plaintiff and failed to stop them; or (4) that the Defendants, as supervisors, created a custom or policy of denial of medical care to persons like Plaintiff, resulting in deliberate indifference to Plaintiff's Constitutional rights. *Id.* at ¶ 42. Each of the Defendants acted under color of State law in this matter. *Id.* at ¶ 42.

## II. LEGAL STANDARD

Summary judgment is only proper if it is shown by the moving party that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F.Supp.2d 1312, 1314 (S.D. Fla. 2008). All evidence and factual inferences must be viewed in the light most favorable to the non-moving party. *See Bruley v. Village Green Management Co.*, 592 F.Supp.2d 1381, 1384 (M.D. Fla. 2008). On a motion for summary judgment it is not the court's function to weigh the evidence and determine the matter, but rather to determine whether a genuine issue of fact exists for trial. *Bien-Aime*, 572 F.Supp.2d at 1314, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A material issue of fact exists for trial unless the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Id.* at 1315, *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Because multiple issues of material fact exist as outlined in detail herein, Defendant's Motion for Summary Judgment should be denied.

## III. LEGAL ARGUMENT

    **A.**     **The United States Supreme Court and the Eleventh Circuit Have Held that**

**Denial of Treatment for Hepatitis C may be a Constitutional Violation, Thus Defendants are not Entitled To Judgment As A Matter of Law.**

In *Erickson v. Pardus*, 551 U.S. 89 (2007), the Supreme Court reversed a dismissal of a prisoner's complaint alleging denial of treatment for Hepatitis C in violation of Section 1983. The prisoner had alleged that the prison's physician had decided to remove the prisoner from his prescribed Hepatitis C medication which was endangering his life. *Id.* at 94. Concluding that the complaint satisfied Fed.R.Civ.P. 8(a)(2), the Court relied upon allegations that the prisoner was denied a treatment program for Hepatitis C that would take one year,4 that he was still in need of treatment and that the prison officials were refusing to provide the treatment. *Id.*

In the instant case, Plaintiff George was known by the Defendants to have Hepatitis C and that he was in need of treatment, but Defendants knowingly denied Plaintiff George treatment of the Hepatitis C. S*ee* Complaint at ¶¶ 13-41, Motion for Summary Judgment at 2. Certainly, the denial of Hepatitis C treatment to Plaintiff makes out a claim for deliberate indifference to a serious medical need. As such, Plaintiff's allegations of Defendants' deliberate indifference, properly set forth Section 1983 claims in this Circuit.

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' …proscribed by the Eighth Amendment." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prisoner states a valid claim, under 42 U.S.C. section 1983, 'whether the indifference is manifested by prison doctors in their response to the prisoner's needs. . . or by prison guards in intentionally denying or delaying access to medical care . . . or intentionally interfering with the treatment once prescribed.'" *Id.* In proving that a prison official acted with deliberate indifference

---

4 In the instant case, Defendants insist that although medical treatment is 12 months, 6 months more are

9

to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry, as follows: (1) the plaintiff must prove an objectively serious medical need, and (2) the plaintiff must prove that the prison official acted with deliberate indifference to that need. *Brown*, 387 F3d at 1351, *citing Farrow v. West*, 320 F.3d, 1235, 1243 (11th Cir. 2003).

Hepatitis C is objectively a serious medical need as recognized by the Supreme Court in *Erickson, supra,* and in *Brown.*[5] *Id.* To establish the second element, deliberate indifference to serious medical needs, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id., citing McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). The Court concluded in *Brown* that the defendants were aware of the prisoner's diagnosis, but completely withdrew the prescribed treatment for his illness, and the prisoner was not receiving any treatment apart from clinic visits. *Id.* Further, the Court recognized that "[d]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment . . . Moreover, '[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Id.* (quoting *Mandel v. Doe,* 888 F.2d 783, 789 (11th Cir. 1989)).

### B. Defendants are Not Entitled To Qualified Immunity

To be entitled to qualified immunity, however, a government official's conduct cannot violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). In *Erickson v. Pardus*, 551 U.S. 89 (2007), the Supreme Court reversed a dismissal of a prisoner's complaint alleging denial of treatment for Hepatitis C in violation of

---

required to counsel a sexual partner . This is the alleged reason Plaintiff was not treated. Motion for Summary Judgment at 4-6.
5 Defendants in the case at hand do not appear to contest that Plaintiff George's medical

Section 1983 that asserted that a prison's physician had decided to remove the prisoner from his prescribed Hepatitis C medication which was endangering his life. *Id.* at 94. Accordingly, denial of treatment of Hepatitis C is a violation of a clearly established constitutional right.

Here, Defendants either argue they cannot be liable because Drs. Le and Solorzano could not provide the treatment, or that the other Defendants were merely supervisors (Motion for Summary Judgment at 19-24). However, as an initial matter, at no time during Plaintiff's incarceration with DOC did he receive medical treatment for Hepatitis C by any physicians. Plaintiff's Affidavit at ¶4 (Doc. 101-4). Also, Plaintiff was never asked if he anticipated sexual partners upon release or that counseling of sexual partners was a requirement of DOC to treat Hepatitis C. *Id.* at ¶3. Defendant Solorzano denied medical requests for treatment of Plaintiff over a year after certain recommendations were made by Defendant Le and others. Furthermore, Defendant Solorzano claims that the 12 month treatment was denied Plaintiff because there was an additional 6 month counseling requirement for sexual partners. Yet, whether he had or anticipated sexual partners after release was not asked of Plaintiff. Had it been asked, Plaintiff would have advised that such counseling of a partner was unnecessary. *See* Plaintiff's Affidavit at ¶ 3 (Doc. 101-2). Additionally, Defendant Le was a participant in the denial of treatment of Plaintiff's Hepatitis C:

- Defendant Le had knowledge of Plaintiff's serious medical need (Complaint at ¶¶20-23;
- Defendant Le informed Plaintiff that he was denied treatment because there were less than eighteen (18) months left until his TRD (*Id.* at ¶ 32);
- Defendant Le signed off on the March 10, 2010 denial of medical care for Plaintiff's condition incorrectly stating that he would be the physician treating the Plaintiff,

---

condition is objectively a serious medical need.

> even though Defendant Le did not treat Plaintiff (*Id.* at ¶ 35);

- Defendant Le failed to process Plaintiff's Requests for Administrative Remedy or Appeal for denial of medical treatment (*Id.* at ¶ 38).

Dr. Nitzkin, Plaintiff's Expert, also opines that:

> The National Commission on Correctional Health Care (NCCHC) has as its #1 Standard, on page 3 of its Standards document, "Access to Care." This is Standard # P-A-01, graded as "essential." This standard specifies that inmates have access to care to meet their serious medical, dental and mental health needs and that the responsible health authority identifies and eliminates any barriers to inmates receiving health care. Access to care is defined as **care provided in a timely manner**, in accordance with a clinicians professional clinical judgment, as ordered by a licensed responsible physician. This standard is in accordance with the basic principle established by the U.S. Supreme Court in the 1976 landmark case, *Estelle v. Gamble*.

Exhibit 5 at 3 (emphasis in original). The lack of care by Dr. Le and Dr. Solorzano could therefore not be deemed reasonable.

Based upon the foregoing, there are material facts in dispute concerning Defendants' liability. Additionally, there are material facts in dispute regarding the liability of Defendants Solorzano and Le being deliberately indifferent to Plaintiff's serious medical needs as both Defendants Solorzano and Le had subjective knowledge of a risk of serious harm to Plaintiff (Complaint at ¶¶20-22); disregarded that risk (Complaint at ¶¶32, 35,38); and their conduct is more than mere negligence. Accordingly, Defendants' Motion for Summary Judgment should be denied.

Defendants Ogunsanwo, McNeil, Robinson and Flores each had knowledge of Plaintiff's serious medical needs. *See* Complaint at ¶¶25-28, 33-42. In *Brown,* the Eleventh Circuit found that a claim for deliberate indifference of a prison administrator and physician could proceed where "[t]he defendants were aware of [plaintiff's] diagnosis of HIV and hepatitis, but completely withdrew the prescribed treatment of [plaintiff's] illness." *Brown*, 387 F.3d at 1351. Here, Defendants denied Plaintiff George **any** treatment and these Defendants were certainly aware of

Plaintiff's serious medical needs by virtue of his grievances as well as the medical tests conducted.

When a supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation there can be supervisory liability. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). In the instant case, Defendants Ogunsanwo, McNeil, Robinson and Flores participated in the denial of medical treatment for Plaintiff George's serious medical needs. Accordingly, there is a causal connection by the actions of these Defendants and the constitutional deprivation by their denial of medical treatment. The Motion for Summary Judgment should therefore be denied.

### C. There is a Causal Connection Between The Denial of Grievances and The Harm Suffered By Plaintiff

Defendants argue that the non-medical professionals are entitled to rely upon the judgment of medical professionals citing to *Durmer v. O'Carroll,* 991 F.2d 64 (3rd Cir. 1999). However, *Durmer* is clearly distinguishable from the instant case as this is not a case in which the non-medical personnel have relied upon medical judgment of professionals. In *Durmer*, the inmate was being treated by a physician and the Court concluded that summary judgment was improper as to the physician, but that the non-medical staff could not be held responsible for the physician's deliberate indifference. *Id.* at 69. However, in the instant matter, the non-medical Defendants were deliberately indifferent in denying each of Plaintiff's numerous medical grievances which made clear he had Hepatitis C and that he was not being treated. *See* Complaint (Doc. 82) at Exhibits A-F. Again, it is undisputed in this case that Plaintiff was not treated at all for Hepatitis C as Plaintiff repeatedly and abundantly made that clear in his written grievances to Defendants.

Courts have found that failing to act on information or even a prisoner's letters to prison

officials could be sufficient to give notice of constitutional violations for purposes of determining liability. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Richardson v. Goord,* 347 F.3d 431, 435 (2d 2003). In the instant case, the non-medical Defendants simply ignored the information of non-treatment and Plaintiff's condition set forth clearly on the grievances.[6] Plaintiff's grievances are replete with information on his lack of treatment, specifically providing notice of the lack of any treatment for his Hepatitis C. Complaint (Doc. 82) at Exhibits A-F.

Due to the lack of any action in the face of repeated notifications, except to deny the grievances, the non-medical Defendants should not be granted summary judgment.

**IV.** **CONCLUSION**

Based upon the above law, argument and the verified material facts as set forth in the Fourth Amended Complaint and the Exhibits attached thereto, and the other pleadings in this matter, there are material facts in dispute and Defendants are not entitled to judgment as a matter of law. Accordingly, Plaintiff Robert Karl George respectfully requests that this Court deny the Defendants' Motion for Summary Judgment and permit this matter to proceed on the merits.

Respectfully submitted,

*S/Neil L. Henrichsen*
Neil L. Henrichsen
Fla. Bar No. 0111503
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola St.
Jacksonville, FL 32204
(904) 381-8183
(904) 381-8191 (Facsimile)
nhenrichsen@hslawyers.com

---

6 It is commonsense and undisputed that the non-medical Defendants could have simply reported the failure to treat Plaintiff, but that was never done. Instead they undertook the affirmative act of denying Plaintiff's grievances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of the foregoing has been furnished to the United States District Court, Middle District of Florida for filing by using the CM/ECF system on this 17th day of December, 2012. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

*S/Neil L. Henrichsen*
Neil L. Henrichsen